RALPH D. WESTON & another, trustees, *vs.* TRUSTEES
OF BOSTON UNIVERSITY.

Suffolk.   December 5, 1946. — March 6, 1947.

Present: FIELD, C.J., LUMMUS, QUA, DOLAN, & RONAN, JJ.

*Landlord and Tenant*, Termination of lease, Construction of lease.   *Words*,
"Commencement."

In a lease of a portion of a tract of land by a university for a term of years
    providing for the erection by the lessee of a substantial business build-
    ing on the leased land and for reimbursement of the lessee by the lessor
    of a part of the cost thereof upon termination of the lease during such
    term, a provision giving the lessor the right to terminate the lease
    upon ninety days' notice "provided always that the reason for such
    termination be attributable . . . to the commencement of the build-
    ing program of the lessor for the construction of . . . [the university]
    upon the site of which the demised premises are a part," in the cir-
    cumstances meant by the words "building program" an extensive
    building plan already definitely formulated by the university when
    the lease was made, and not a project, conceived by the university
    for the first time eight years later, at a time when no construction
    under such plan in the area of the leased premises was even contem-
    plated, of erecting a temporary building in the rear of the lessee's
    building and of using both buildings for a limited period for research
    work under a government contract obtained at that time by the
    university; and a notice of termination of the lease then given by
    the lessor to the lessee in furtherance of such project was not for a
    "reason . . . attributable . . . to the commencement of the build-
    ing program," and was ineffective.

BILL IN EQUITY, filed in the Superior Court on March 23,
1946.

The suit was heard by *Swift*, J.

*F. B. Wallis*, (*F. C. Cowan* with him,) for the plaintiffs.
*A. F. Richard*, (*L. E. Thayer* with him,) for the defendant.

QUA, J.   By this suit all parties seek the decision of the
court as to whether certain notices in writing given by the
defendant to the plaintiffs were effective to terminate a
lease which had been granted by the defendant to one Gow
and assigned by Gow to the plaintiffs.   The suit involves
the construction of the lease and the validity of the notices

in the circumstances shown, and was brought before the time specified in the notices for termination of the lease. The suit was therefore brought for declaratory relief under G. L. (Ter. Ed.) c. 231A, as inserted by St. 1945, c. 582, § 1. The plaintiffs appeal from a decree in favor of the defendant. The evidence is reported.

The lease was dated February 18, 1938. It covered a portion of the land owned by the defendant on Commonwealth Avenue in Boston west of Ashby Street. It was to run for a term of ten years with an option to the lessee to extend it for a further term of five years, all subject to termination by the defendant as hereinafter stated. It contained provisions for the erection by the lessee of a building on the premises to be used as a "Howard Johnson Restaurant" and for reimbursement by the lessor to the lessee of part of the cost of the building, based upon a depreciation rate of ten per cent a year, if the lease should be terminated within the first ten years. The plaintiffs or interests allied with them erected the building at a cost of about $64,000. Further substantial sums were expended for equipment, bringing the total cost to between $90,000 and $100,000. Business was begun there in the spring of 1938.

The part of the lease most important in this case is found in the item numbered 11 relating to termination. This item, so far as material, provides that the lessor shall have the right to terminate the lease by giving the lessee ninety days' written notice, "provided always that the reason for such termination be attributable . . . to the commencement of the building program of the lessor for the construction of Boston University upon the site of which the demised premises are a part . . .." Under date of February 25, 1946, and again in a different form of words under date of March 19, 1946, the defendant gave the plaintiffs notice of termination of the lease. The question in the case is whether under a proper construction of item 11 and in the circumstances actually existing the reason for termination by these notices or either of them was "attributable . . . to the commencement of the building program of the lessor

for the construction of Boston University upon the site of which the demised premises are a part." This involves an interpretation of the words "building program of the lessor for the construction of Boston University" and an examination of the facts existing at the time the notices were given in order to determine to what the proposed termination was "attributable." It might also involve the interpretation of the word "commencement," but we shall not find it necessary to deal with this at any length.

It is plain that, when the parties made the right to terminate the lease and to oust the lessee or his assignees from a building to be newly built by them at great expense and from a potentially large and prosperous business depend upon "the building program of the lessor for the construction of Boston University," they did not intend that those having the lessee interest should be subject to the mere whim or even to every possible legitimate need of the lessor. We should carefully inquire whether there did not exist at the time the lease was made a "program," the substance of which was capable of ascertainment and which could serve as an external or objective standard in governing the rights of the parties. We think that the evidence clearly shows that such a "program" did exist. For many years Boston University had had a very large body of students who attended a number of different colleges, all forming parts of the university but scattered in various locations in the city of Boston and in Cambridge. In general the accommodations of the several colleges were cramped and inadequate. The university as a whole suffered from this condition. It had long been a "hope" and a "dream" of the officers of the university to bring these colleges, except the Medical School, together in one large suitable location and to house them adequately in new, permanent, and beautiful buildings of noble and commanding architecture. Great efforts had been made in pursuance of this plan. Between the years 1920 and 1928, inclusive, a large tract of land had gradually been acquired practically on the bank of Charles River bounded northerly by Bay State Road and southerly by Commonwealth Avenue and extending in an easterly and

westerly direction from Granby Street to University Road. Ashby Street bisected the tract near the center and divided it into an easterly portion and a westerly portion. After the acquisition of the land, architects were engaged and the making of preliminary plans for a large group of buildings was begun. Money raising activities were initiated. All this necessarily involved wide publicity. By the time the lease here in question was executed the university was practically ready to begin the erection of the first building, known as the Charles Hayden Memorial, on the portion of the tract east of Ashby Street. Four months after the lease more than $1,000,000 was available for that building, and it was voted that a contract be signed for its construction. When the lease was executed both parties to it were fully aware of the great design of gathering the scattered elements of Boston University into new buildings which should form a fitting and dignified seat for a great university on the Commonwealth Avenue location. This design was discussed between the parties in negotiating for the lease. The lessee was advised by the agent of the university that the university was about to begin construction of the first building upon the land east of Ashby Street, but that it was likely to be a great many years before construction extended to the portion west of Ashby Street, where the restaurant was to be built. Enough has been said to make it clear that when the parties to the lease referred in the termination clause to "the building program of the lessor for the construction of Boston University" they meant the grand plan hereinbefore outlined and intended to make that and nothing less than that the objective standard by the requirements of which the right to terminate should be measured.

We come next to the events immediately preceding the giving of the notices in the early part of the year 1946. Up to that time no construction had been begun by the university west of Ashby Street and none was in immediate contemplation. But shortly before the first notice was given the university secured a contract from the United States government to do research work in connection with aerial

photography. This work could be finished in about thirty months, unless an additional contract should be given. The university then conceived the idea of erecting for this work on land west of Ashby Street and in the rear of the plaintiffs' restaurant a one-story, steel frame, corrugated metal covered building about one hundred feet long by fifty feet wide, supported by concrete piers and with a reinforced concrete floor laid on gravel. In the application for a permit this building was described as "temporary." Its estimated cost was $18,737. It was to be so placed that it could be connected with the plaintiffs' restaurant building, which of course would fall into the defendant's hands if the lease could be terminated. The restaurant building was to be remodeled, and the two buildings were to be used together as a research laboratory in performing the government contract and possibly for such other research as might conveniently be carried on there.

We are not inclined to construe too narrowly the word "commencement" in the expression "commencement of the building program of the lessor for the construction of Boston University." It may well be that the "commencement" includes the continuation of the program after it commences and that it is the true meaning of the lease that the lessor may terminate it whenever "the building program of the lessor for the construction of Boston University" reaches such a stage that in the reasoned and honest judgment of the lessor it needs the space occupied by the plaintiffs' building for some use in connection with that program. For the purposes of this decision we assume that this is so. But it is plain upon the evidence in this case that the building program of the lessor for the construction of Boston University, as hereinbefore defined, had not reached any such stage when the notices were given. At that time one building forming part of the program had been built, and that was east of Ashby Street. The next buildings in order were also to be east of Ashby Street. The plaintiffs' building in no way interfered with these. The reason for termination was not "attributable" to any building constructed or contemplated east of Ashby Street. It was "attributable" to

the desire of the university to use the plaintiffs' building in connection with its new corrugated iron building for the purposes of the government contract but with the possibility of use for some other as yet unascertained projects while these buildings should remain available. This is an unavoidable inference from the testimony of the president and of the treasurer of the university.

It seems to us equally plain that neither the plaintiffs' restaurant building nor the temporary, one-story, corrugated metal structure built on piers, nor both together, constituted any part of the "building program of the lessor for the construction of Boston University" which was made the test by the terms of the lease. The idea of using these buildings was wholly foreign to the great plan hereinbefore described. It was not even incidentally related to that plan. It was nothing but a temporary expedient to meet an unexpected and perhaps temporary situation. It was related to the government contract, perhaps with some indefinite thought of possible use for other projects. The government contract was never dreamed of when the lease was made. However desirable it may have been for the university to undertake this contract and possible other projects, and however consistent such action may have been with the larger objectives for which the university existed, the notices given in furtherance of such a purpose were not for a reason "attributable . . . to the commencement of the building program of the lessor for the construction of Boston University upon the site of which the demised premises are a part . . ." as that program was understood when the lease was made and adopted by the parties in the lease as the measure of their rights.

The final decree must be reversed and a final decree must be entered declaring that the notices and each of them were invalid and did not terminate the lease. The plaintiffs are to have their costs. A purported "appeal" "from all the orders and findings . . . in the memorandum of the court on file" is dismissed.

*So ordered.*