EVAN T. LAWSON *vs.* ROLLINS BURDICK HUNTER OF MASSACHUSETTS, INC. November 28, 1984. *Practice, Civil,* Summary judgment. *Notice. Landlord and Tenant,* Construction of lease.

Through one of its partners, the law firm Lawson & Wayne (Lawson) commenced the present action against Rollins Burdick Hunter of Massachu-

setts, Inc. (RBH) to secure a declaration that it had the right of occupancy under a sublease in which RBH was sublessor and Lawson sublessee. The parties filed cross motions for summary judgment.

1. *Record on the motions.* Omitting various details, the evidence submitted on the motions went thus. RBH and Lawson were neighbors on the thirtieth floor of the Keystone Building at 99 High Street, Boston. On December 20, 1982, RBH, as sublessor, and Lawson, as sublessee, entered into a sublease covering 1,425 square feet on that floor, to run from January 15, 1983, to March 31, 1984; further, RBH sublet to Lawson the same area and an additional contiguous 2,579 square feet, for a total of 4,004 square feet, to run from April 1, 1984, to November 30, 1988, subject to a reservation by RBH in paragraph 5:

> "So long as Sublessor does not notify in writing Sublessee on or before June 30, 1983, of its decision to occupy itself or with any firm with which it merges or is consolidated the following described premises, Sublessor hereby demises to Sublessee the approximately 4,004 square feet of space on said floor as outlined on the plan attached hereto, together with the right to use the common areas. To hold for the term April 1, 1984, to November 30, 1988, yielding and paying therefor the basic rent."

On June 9, 1983, RBH wrote Lawson that "[i]n order to protect our position . . . this letter serves to inform you formally that we will exercise our option on the space which you currently occupy . . . .[1] At this point we are uncertain as to whether we will actually need the space or not, but we feel that we need to protect our options." On June 27, 1983, RBH wrote again; referring to paragraph 5, it stated: "Please accept this letter as formal notice in writing that [RBH] has decided to notify you that it wishes to occupy your premises as of March 31, 1984. This notice is given to you as required by Paragraph 5 of the . . . sublease. As previously communicated to you verbally, we shall be glad to enter into negotiation with you to write a new sublease, the terms of which can include a one-year notice of termination of lease as well as possible revisions in the basic rent."

A Lawson partner stated by affidavit that, during the negotiation of the lease, RBH gave as the only reason for not making absolute the lease of the 4,004 square feet that it might need to occupy the space itself; in that event Lawson would want advance notice in order to find other quarters; hence paragraph 5. The partner stated further that, after the June 27 notice, on July 11, 1983, he had informed RBH that Lawson did not consider that RBH had exercised its "option" because RBH had made no decision to occupy the space involved. He said that on July 11 and July 25, 1983, representatives of RBH told him that no such decision had been made.

---

[1] The statement should be taken to extend to all 4,004 square feet. There is an indication in the record that Lawson at that time was occupying the entire area, including the 2,579 square feet, under earlier extraneous arrangements, but the point is not material.

On the part of RBH, affidavits by a vice president stated that in June, 1983, RBH determined that it had need for the space and had decided to occupy it and gave notice of the decision to Lawson. However, as an accommodation to Lawson, or because there was some flexibility in RBH's current, short term need for space, RBH informed Lawson that it was willing to discuss a new lease. But RBH stood by its decision to occupy the premises.

2. *Ruling below.* The judge allowed summary judgment in Lawson's favor, and RBH appealed. The judge evidently took the view that the reservation in paragraph 5 would not be satisfied by RBH's merely notifying Lawson that it had decided to occupy the space as from April 1, 1984; RBH must in fact have made that decision. But, according to the judge, it appeared clearly from the letters of June 9 and June 27 — sufficiently clearly, in her opinion, for summary judgment — that RBH had not in fact made the decision. On examining the letters, one sees that the first mentioned RBH's uncertainty, and the second, while announcing RBH's decision to occupy, held out the possibility of a future agreement on some form of occupancy by Lawson. The judge denied RBH's motion to strike portions of one of the Lawson affidavits,[2] but she said she was relying solely on the terms of paragraph 5 and the two letters in reaching her decision.

3. *Criticism.* In our opinion Lawson, as moving party, has not sustained the burden of showing that "there is no genuine issue as to any material fact" and that it "is entitled to a judgment as a matter of law." Mass.R.Civ.P. 56(c), 365 Mass. 824 (1974). *Community Natl. Bank* v. *Dawes,* 369 Mass. 550, 554 (1976).

The letter of June 27, although slipshod in its phrasing, was adequate in form; that is, it would reasonably be understood by Lawson as a notice intended to exercise rights under paragraph 5. See *McCarthy* v. *Harris,* 17 Mass. App. Ct. 1002, 1003 (1984), and compare *Maguire* v. *Haddad,* 325 Mass. 590, 593 (1950). The judge was correct in her view that paragraph 5 required more than the mere statement by RBH that it had decided to occupy; there must have been such a decision in fact. In this respect the present case resembles *Weston* v. *Trustees of Boston Univ.,* 321 Mass. 150 (1947) (Qua, J.).[3] And see *Pine St., Inc.* v. *Oregon Paramount Corp.,* 272 Or. 409, 410 (1975); *Southeastern Land Co.* v. *Clem,* 239 Ky. 417, 420 (1931). But issues remain: What is the proper further interpretation of paragraph 5? Did RBH in fact make a decision about occupancy? If so, what was the nature of the decision?

---

[2] RBH objected on grounds of the parol evidence rule to the part of the affidavit that spoke of discussions between the parties before the making of the lease. See point 3 below.

[3] Under a lease giving Boston University, lessor, a right of termination "provided always that the reason for such termination be attributable . . . to the commencement of the building program of the lessor for the construction of Boston University," the court went minutely into whether that reason existed at the time notice was given under the lease. This involved an examination of the meaning of "building program," the status of the program, and the relation to it of the lease termination. In the end the court held that the reason did not exist.

The judge evidently thought that a decision by RBH to occupy, accompanied by the suggestion of a negotiation with Lawson to write another lease, could not qualify under paragraph 5. We do not think this is the necessary construction of the language of the reservation: that language does not necessarily repel an interpretation that a decision to occupy, fulfilment of which is contingent solely on a mutually acceptable future agreement between the parties, suffices as an exercise of the "option." See a comparable situation in *Bismarck Hotel Co.* v. *Sutherland,* 92 Ill. App.3d 167, 173 (1980). We do not say that this possible interpretation will be found correct; it may be that the judge's reading will finally prevail. As paragraph 5 is not self-defining, interpretation will perhaps be assisted by proofs of happenings before or at the time of the making of the lease: the parol evidence rule will not forbid, if the proofs tendered are within the range permitted by *Robert Indus. Inc.* v. *Spence,* 362 Mass. 751, 753-754 (1973);[4] *Antonellis* v. *Northgate Constr. Corp.,* 362 Mass. 847, 851 (1973). In the end, the trier may have to choose between rival plausible constructions of paragraph 5 which may be seen to have more rubber in it than the judge allowed.[5]

As to whether RBH in fact made a decision, and, if so, what it was,[6] the affidavits indicate a dispute between the parties apparently turning on credibility that cannot be settled on the papers submitted in support of the respective motions. See 10A Wright & Miller, Federal Practice and Procedure § 2726 (2d ed. 1983). Cf. *Guenard* v. *Burke,* 387 Mass. 802, 812-813 (1982), citing *Junkins* v. *Slender Woman, Inc.,* 7 Mass. App. Ct. 878 (1979). The relevant issues of fact take shape in the light of the interpretation finally put on paragraph 5.

We intend no forecast of the outcome of this action. If it was error to allow Lawson's motion, so also it would have been a mistake to allow RBH's motion.

*Judgment reversed.*

*Rory FitzPatrick* for the defendant.
*Evan T. Lawson,* pro se *(William F. Coyne, Jr.,* with him).

---

[4] "A lease is to be read in the light of the circumstances of its execution, which may enable the court to see that its words are really ambiguous. *Sheff* v. *Candy Box, Inc.,* 274 Mass. 402, 406 (1931). When the written agreement, as applied to the subject matter, is in any respect uncertain or equivocal in meaning, all the circumstances of the parties leading to its execution may be shown for the purpose of elucidating, but not of contradicting or changing, its terms." 362 Mass. at 753-754.

[5] Conceivably "occupy" as used in paragraph 5 may also require interpretation, possibly assisted by evidence not offensive to the parol evidence rule.

[6] The nature of RBH's actual needs, or its forecast of needs, may have a bearing on these matters.