BISMARCK HOTEL CO., Plaintiff-Appellee, *v.* KIMBERLY A. SUTHERLAND, Defendant-Appellant.

First District (3rd Division)     No. 79-2266

Opinion filed December 17, 1980.—Rehearing denied January 16, 1981.

168

Kimberly A. Sutherland, of Chicago, for appellant.

Arthur Rosenblum, of Chicago (Kenneth Scranton, Ltd., of counsel), for appellee.

Mr. JUSTICE RIZZI delivered the opinion of the court:

Plaintiff, Bismarck Hotel Co., owner of the Metropolitan Building located at 134 N. La Salle Street in Chicago, filed a forcible entry and detainer action against defendant, Kimberly Sutherland, a tenant in the building. Defendant is an attorney and rented a suite which she uses as law offices. Defendant appeals from the following orders entered by the trial court: (1) denying defendant's motion for summary judgment and granting plaintiff's motion for summary judgment; (2) granting plaintiff's motion to strike defendant's counterclaim and denying defendant's motion to file an amended counterclaim; and (3) denying defendant's motion for a temporary restraining order and a preliminary injunction. We affirm in part and reverse in part.

Defendant and another attorney, James Leeson, executed a written lease with plaintiff for suite 700 of the Metropolitan Building for the term December 1, 1976, through December 31, 1978. On October 12, 1978, plaintiff asked defendant whether she would be willing to move to another suite within the building when her lease expired. Leeson had abandoned the premises several months earlier. Defendant declined the offer. Plaintiff then indicated that the rent for suite 700 would increase from $625 per month to $700 per month as of January 1, 1979. Defendant agreed to the increased rent.

The next day, plaintiff sent defendant a letter stating that defendant's lease would not be renewed. However, it offered her the option of renting another suite. Defendant accepted the offer under protest and demanded that her lease to suite 700 be renewed in writing. After defendant's written lease expired on December 31, 1978, defendant received a bill for January

rent in the amount of $700, which she paid. Rent bills for February, March and April were also subsequently paid.

On February 8, plaintiff informed defendant by letter that she had been a month to month tenant since January 1, and that her tenancy would be terminated on April 30, 1979. In closing, plaintiff stated that it was willing to discuss any other arrangements which defendant might wish to make. Defendant responded that she considered plaintiff's conduct to be a renewal of her former lease. Further negotiations occurred in April, but no agreement was reached. Plaintiff did not send defendant a rent bill for May, but accepted the $700 tendered by de-defendant.

On May 17, plaintiff and defendant orally agreed to a new lease for suite 700 for the term July 1, 1979, to September 30, 1981. The next day, plaintiff sent defendant a letter acknowledging the terms of the oral lease. Plaintiff subsequently sent defendant a written copy of the lease which reflected the terms set forth in plaintiff's May 18 letter. Defendant refused to sign it, claiming that it was not in conformity with the May 17 oral agreement. She requested that a corrected lease be prepared. Meanwhile, she paid rent for the month of June.

On June 11, defendant wrote to the Wirtz Realty Corporation, which manages the Metropolitan Building. She complained of the lack of good faith bargaining by the agents of Wirtz Realty and noted the discrepancies between the oral agreement and the proposed lease. She concluded by saying that this would be her final attempt to settle the matter out of court.

Plaintiff filed its forcible entry and detainer action on June 19. Defendant filed an answer denying the allegations in the complaint and submitted a jury demand. In addition, she filed a counterclaim against plaintiff and its attorney for abuse of process. Defendant also filed a petition for a temporary restraining order and a preliminary injunction. She claimed that her business would suffer irreparable harm unless plaintiff was restrained from interfering with her use and occupancy of the suite. The court denied this petition without prejudice.

Plaintiff subsequently filed a motion for summary judgment and a motion to strike the counterclaim. The court ordered the counterclaim stricken. Before the court had ruled on plaintiff's motion for summary judgment, defendant filed a motion for summary judgment. She also sought to file an amended counterclaim against plaintiff, its attorney and Wirtz Realty.

The court granted plaintiff's motion for summary judgment and awarded plaintiff possession. It denied defendant leave to file an amended counterclaim because the issues therein were not germane to the issue of

forcible entry and detainer. Subsequently, the court entered an order staying the judgment for possession pending this appeal.

■■■ We first address the question relating to defendant's right to possession of the premises. One of defendant's contentions is that a holdover tenancy arose when plaintiff accepted rent for the month following the expiration of her lease. A holdover tenancy is created when a landlord elects to treat a tenant, after the expiration of his lease, as a tenant for another term upon the same provisions contained in the original lease. (*Luster v. Estate of Cohon* (1973), 11 Ill. App. 3d 608, 297 N.E.2d 335 (abstract).) It is the intention of the landlord, not the tenant, that determines whether the tenant is to be treated as a holdover. (*Balaban & Katz Corp. v. Channel Amusement Co.* (1948), 336 Ill. App. 113, 120, 83 N.E.2d 27, 30.) While the landlord's acceptance of rent for the month following expiration of the lease may by itself indicate the landlord's election to treat the tenant as a holdover (see *Eppstein v. Kuhn* (1906), 225 Ill. 115, 122-23, 80 N.E. 80, 83), other facts and circumstances bearing on the landlord's intent should be considered as well. *Sheraton-Chicago Corp. v. Lewis* (1972), 8 Ill. App. 3d 309, 311, 290 N.E.2d 685, 686-87.

■■ Here, more than two months before defendant's written lease expired, plaintiff informed defendant that the lease would not be renewed. Plaintiff took no actions which were inconsistent with this position. In addition, the terms under which defendant remained in possession differed from the terms under the written lease. James Leeson, a party to the written lease, had abandoned the premises. Also, plaintiff increased the rent from $625 to $700 following the expiration of the written lease. Accordingly, it is clear that plaintiff never intended to extend the terms of the written lease by creating a holdover tenancy.

We next consider defendant's contention that she is entitled to remain in possession of suite 700 until September 30, 1981. Defendant argues that on May 17 the parties orally agreed to a new lease with a September 30, 1981, termination date, the essential terms of which were embodied in a letter from plaintiff the following day. Plaintiff, in its May 18 letter, set forth the proposed terms of a new lease which it perceived had been agreed upon the previous day. Plaintiff stated that monthly rental from July 1979 through September 1980 would be $700, and that from October 1980 through September 1981 it would be $760, with an allowance for the month of September 1981 in the amount of $720; this allowance was made subject to fulfillment of all the terms and conditions of the lease. However, when plaintiff sent defendant a written lease which included the terms set forth in its May 18 letter, defendant refused to sign it. Defendant claimed that it did not conform to the May 17 oral agreement. In particular, she complained that the lease showed a lump sum credit of

$720 for rent due in September 1981 rather than a $60 credit for each month during the final year of the lease. She demanded another lease which would properly reflect the oral agreement.

■■ Plainly, these facts do not establish the existence of a lease or contract to make a lease. An essential element of a lease is a definite and agreed price of rental and manner of payment. (*People v. Chicago Metro Car Rentals, Inc.* (1979), 72 Ill. App. 3d 626, 629, 391 N.E.2d 42, 45; *Lannon v. Lamps* (1977), 53 Ill. App. 3d 145, 150, 368 N.E.2d 196, 199.) Plaintiff's letter, on which defendant relies in order to remove the oral agreement from the Statute of Frauds, outlined what plaintiff considered to be the terms regarding payment of rent. These same terms were embodied in the lease form which was sent to defendant and formed the basis for defendant's rejection of the proffered lease. Accordingly, since there was no agreement regarding the payment of rent, the May 18 letter cannot be viewed as a lease reflecting a mutual agreement of the parties. Similarly, we reject the argument that the May 18 letter constituted an offer to lease which became binding when accepted by defendant. Even if we were to construe the letter as an offer, it is clear that defendant did not accept the offer since she continued to insist on different terms. See *Snow v. Schulman* (1933), 352 Ill. 63, 71, 185 N.E. 262, 266.

■■ Defendant next contends that by virtue of plaintiff's conduct, plaintiff is estopped to deny that she became a holdover on January 1, 1979, and then a lessee on July 1, 1979. Estoppel contemplates a good-faith reliance by one party on the voluntary conduct or statements of a second party which leads to a detrimental change in the first party's position. (See *Shockley v. Ryder Truck Rental, Inc.* (1979), 74 Ill. App. 3d 89, 94, 392 N.E.2d 675, 678; *Balaban & Katz Corp. v. Channel Amusement Co.* (1948), 336 Ill. App. 113, 120-21, 83 N.E.2d 27, 30.) Defendant maintains that she relied on plaintiff's conduct in that she remained on the premises after her written lease expired and paid the increased monthly rent until this suit was filed. She claims that she suffered the instability of not knowing her status as a tenant. However, defendant's own conduct belies the validity of her claim. It was her decision to remain in possession after her lease expired and after she received notice to quit. Thus, the uncertainty regarding her status stems from her own actions. Also, the fact that defendant remained in suite 700 and paid the increased rent was not detrimental to defendant. In essence, part of the relief which defendant seeks in this suit is a continuation of this "detriment." Accordingly, equitable estoppel is inapposite.

■■ We next consider whether a month-to-month tenancy was created. Defendant remained in possession of the suite after her lease expired on December 31, 1978. Thereafter, plaintiff sent defendant monthly rent bills in the increased amount of $700 and the bills were paid by defendant.

Under the circumstances, the conduct of the parties establishes that a month-to-month tenancy had been created.

The next question is whether plaintiff's notice to quit terminated defendant's month-to-month tenancy. In its letter dated February 8, 1979, plaintiff informed defendant that her month-to-month tenancy in suite 700 would be terminated effective April 30, 1979, and that she should vacate and peaceably surrender the suite as of that date. Plaintiff concluded the letter by stating that it would be available to discuss any other arrangements which defendant might wish to make. Defendant maintains that this notice to quit was defective because it was equivocal on its face and because negotiations between the parties were still pending.

A notice to quit must be clear and intelligible, and not ambiguous or optional. (*Gross v. Wolfner* (1922), 226 Ill. App. 581, 583.) It is sufficient as long as it adequately informs the tenant of the landlord's intent to end the tenancy. Here, plaintiff clearly apprised defendant that it was terminating her tenancy as of April 30. The mere fact that plaintiff volunteered to discuss other arrangements did not make the notice equivocal. We also reject defendant's argument that the notice was invalid because plaintiff engaged in negotiations after giving the notice. Since the parties did not reach a new agreement by April 30, the notice remained in full force and effect through that date.

After April 30, however, plaintiff's conduct did constitute waiver of the notice. Plaintiff accepted monthly rent from defendant at the beginning of May and June. The acceptance of the rent after the termination date provided in the notice constituted a waiver of the notice. (See *Hoefler v. Erickson* (1947), 331 Ill. App. 577, 584, 73 N.E.2d 448, 451.) Thus, plaintiff's argument that defendant was merely a tenant at sufferance when the forcible entry and detainer suit was filed on June 19 is untenable. Plaintiff was required to give defendant another 30-day notice to quit before filing its suit. See Ill. Rev. Stat. 1977, ch. 80, par. 6.

Accordingly, defendant has been a month-to-month tenant since January 1, 1979. The material facts on this issue are not in dispute since plaintiff adopted the factual allegations in defendant's counterclaim. Thus, there is no genuine issue as to any material fact regarding defendant's right to possession of the premises. It follows that on the issue of possession, summary judgment should be entered in favor of defendant as a month-to-month tenant. See Ill. Rev. Stat. 1977, ch. 110, par. 57(3); *Shockley v. Ryder Truck Rental, Inc.* (1979), 74 Ill. App. 3d 89, 93, 392 N.E.2d 675, 677; *Riley v. Singer* (1979), 75 Ill. App. 3d 1036, 1040, 394 N.E.2d 746, 749.

We next address defendant's contention that the trial court erred in striking her counterclaim and denying her motion to file an amended

counterclaim. The counterclaim alleged an action for abuse of process against plaintiff and its attorney. Defendant claimed that they conspired to coerce her into signing a lease while they avoided their obligation to execute a written lease containing the terms orally agreed upon on May 17. Essentially, defendant sought to have the court declare that she was a holdover tenant or that there was a valid lease between plaintiff and defendant which embodied the May 17 terms. She also sought $200,000 in compensatory damages and $2,200,000 in punitive damages.

In an amended counterclaim, defendant charged plaintiff, its attorney and Wirtz Realty with three counts of fraud and three counts of violating, or conspiring to violate, defendant's civil rights. Punitive damages totalling $13,200,000 were sought. Defendant also asked for a declaratory judgment as to her status as a tenant.

The trial court struck defendant's counterclaim and denied her motion to file the amended counterclaim because the counterclaims were not germane to the forcible entry and detainer action. We agree.

The purpose of a forcible entry and detainer action is to adjudicate the parties' rights to possession of the premises, and, therefore, such proceedings should not be burdened by matters not directly related to the issue of which party is entitled to possession. (*General Parking Corp. v. Kimmel* (1979), 79 Ill. App. 3d 883, 886, 398 N.E.2d 1104, 1106.) Section 5 of the Forcible Entry and Detainer Act provides that matters not germane to the distinctive purpose of the proceeding shall not be introduced by joinder, counterclaim or otherwise. (Ill. Rev. Stat. 1977, ch. 57, par. 5.) The Illinois Supreme Court has defined "germane" in terms such as "closely allied," "closely related" and "appropriate." *Rosewood Corp. v. Fisher* (1970), 46 Ill. 2d 249, 256, 263 N.E.2d 833, 838.

■■ In the present case, the counterclaim and the amended counterclaim involve parties that clearly were not involved in the issue of possession. The claims essentially involve damages rather than possession. Moreover, many of the allegations are general rather than factual, and they do not demonstrate a relationship between the claims and the issue of which party is entitled to possession of the premises. Labeling a claim as a "conspiracy to violate civil rights" or "fraud" in a forcible entry and detainer action is insufficient to render the claim germane to the forcible entry and detainer action if there is no nexus between the claim and the issue of which party is entitled to possession. Plainly, defendant's actions here for conspiracy, violation of her civil rights and fraud, seeking punitive damages, are not germane to the distinctive purpose of a forcible entry and detainer proceeding. Accordingly, the trial court properly struck the counterclaim and denied defendant's motion to file the amended counterclaim as to those actions.

The remaining question relating to the amended counterclaim in-

volves the count for a declaratory judgment as to defendant's status as a tenant. Since defendant's action for a declaratory judgment involved the issue of possession, which was the very issue raised by plaintiff in the forcible entry and detainer complaint, the trial court properly denied defendant's motion to file the amended counterclaim as it related to the declaratory judgment action.

■■ Defendant's final contention concerns the dismissal of her petition for a temporary restraining order and preliminary injunction in which she sought to restrain plaintiff from any prospective interference with her use and enjoyment of the premises. The purpose of a temporary restraining order is to preserve the status quo until the court can arrange for a hearing on an application for a preliminary injunction (*Kirchenberg v. Chicago Transit Authority* (1973), 13 Ill. App. 3d 184, 186, 300 N.E.2d 482, 483), or until the court can consider the case on its merits (*Board of Education v. Springfield Education Association* (1977), 47 Ill. App. 3d 193, 196, 361 N.E.2d 697, 700). Similarly, a preliminary injunction serves the purpose of maintaining the status quo until the case is disposed on its merits. (*Hill v. Village of Pawnee* (1973), 16 Ill. App. 3d 208, 209, 305 N.E.2d 740, 741.) Since a summary judgment in favor of defendant as a month-to-month tenant is being entered, the issuance of a temporary restraining order or preliminary injunction would no longer be appropriate. The issue is therefore moot.

Accordingly, the summary judgment in favor of plaintiff is reversed, and a summary judgment is entered in favor of defendant as to defendant's right to possession of the premises as a month-to-month tenant. The orders striking defendant's counterclaim and denying the motion to file an amended counterclaim are affirmed. The dismissal of defendant's petition for a temporary restraining order and preliminary injunction is not considered on appeal because it is moot.

Affirmed in part and reversed in part.

McGILLICUDDY, P. J., and SIMON, J., concur.