(No. 84-CC-0675–)

First National Bank of Skokie, a corporation, as Trustee under Trust No. 50266 T, and Richard Wanland, Wanland Realty, a corporation, Claimants, *v.* The State of Illinois, Respondent.

*Opinion filed August 20, 1987.*

*Order on denial of rehearing filed December 15, 1987.*

DREYER, FOOTE, STREIT, FURGASON & SLOCUM, P.A. (WILLIAM J. FOOTE, of counsel), for Claimants.

NEIL F. HARTIGAN, Attorney General (JENNIFER DOVER, Assistant Attorney General, of counsel), for Respondent.

## OPINION

RAUCCI, J.

This dispute arises out of a lease between Claimants and the Department of Labor for premises at 10833 South Halsted, Chicago, Illinois.

On April 1, 1981, the Claimants and the Respondent entered into a two-year written lease of space used for an unemployment office. Rent for the building was set at $5,400 per month. Additionally, the State was obligated to pay any amount of property taxes for the years 1982 and 1983 that exceeded the assessment for 1977 taxes ($3,970.27). These terms were identical to a five-year lease which terminated on March 31, 1981.

Claimant wrote to Richard Sramek, of the Respondent's Department of Administrative Services to remind him that the lease would expire, and to discuss terms for a new lease. Claimant requested an increase in the rent

to $6,680.00 per month. After reviewing Claimant's letter, the State began investigating alternative sites for the unemployment office *prior* to the expiration of the lease.

On March 10, 1983, the State forwarded to Claimants a proposed three-month extension of the lease for the months of April, May and June of 1983. Claimant rejected the three-month extension.

After the lease expired on March 31, 1983, the State began negotiating for a four-month "close-in" lease with Wanland. Meanwhile, the State sought alternative facilities while "negotiating" a new lease with Claimant.

On April 19, 1983, Claimant Wanland wrote again to Sramek. Attached to the letter of April 19, 1983, was a proposed five-year lease executed by the trustee, as lessor. The proposed lease did not contain a four-month "close-in" restriction, but rather a five-year "close-in" requirement.

The State rejected the proposed five-year lease. The State told Claimant that the building needed too many repairs for it to sign a five-year lease. In response to the State concern about the lease, Claimant offered to put thirty thousand dollars ($30,000.00) worth of repairs and improvements into the building with a rent increase of $942.50 per month.

On April 25, 1983, the State again refused to enter into a five-year lease. At no time during any of these discussions or negotiations did Claimant request that the State leave the premises. In response to Wanland's letter, the State again offered a five-year lease with a four-month termination notice clause. Claimant insisted that no termination be allowed until after the five-year term.

In mid-May, Claimant learned that the State was moving to a new location.

On May 23, 1983, Claimant served the State with a five-day notice for possession. One day after the notice expired, Claimant had the locks changed on the doors of the building. As a result, approximately 40 State employees and the general public were locked out of the unemployment office. The State alleges that employees' salaries in the amount of $9,006.00 were lost as a result of the lockout, and that the public was greatly inconvenienced.

The State secured a temporary restraining order compelling Claimant to grant access to the office. The record is unclear as to whether Claimant refused to obey the court order or whether Claimant had sufficient time to comply. In any event, the State had the locks drilled at an expense of $148.00. Additional security guards had to be hired during this time period at the expense of $102.00. The total cost to the State as a result of the lockout was $9,256.00.

On June 3, 1983, the State moved out of the premises. And, on September 7, 1983, the same premises were leased to Karin Sweis at $3,400 per month; two thousand dollars less than the State was required to pay and less than the new lease proposed by Claimant. As a lease concession, Claimant did not require that Sweis pay rent for the months of September, October, November or December of 1983.

The State concedes that it owes rent for April, May and June of 1983, as well as the real estate tax adjustment through that period. Three months rent totals $16,200.00. The tax adjustment provision of the lease provides that the State is responsible for the real estate taxes in excess of the 1977 tax bill of $3,970.27. For 1982, the tax excess is $12,198.31 ($16,168.58 minus $3,970.27) and for the

first six (6) months of 1983 in the amount of $6,021.48 ($16,013.19 minus $3,970.27 equals $12,042.96 for all of 1983—divided by two) for a total real estate tax adjustment of $18,219.79. Thus, the State concedes it owes a total of $34,419.79.

For the reasons set forth hereinafter, we determine that the extent of the State's liability is $34,419.79.

The parties never reached agreement on a new lease. The facts in this case fall within the rule of *Bismarck Hotel Co. v. Sutherland* (1981), 92 Ill. App. 3d 167, 415 N.E.2d 517. Where the landlord informs the tenant that the landlord wants an increase in rent and in the terms of the lease, there is no holdover tenancy. Negotiations for new terms are inconsistent with an election to treat the tenant as a holdover.

Additionally, section 9—202 of the Code of Civil Procedure (Ill. Rev. Stat. 1985, ch. 110, par. 9—202), provides that a demand in writing for possession is necessary to create a holdover tenancy.

Accordingly, the State's liability is limited to $34,419.79.

It is therefore ordered, adjudged and decreed that Claimant is awarded $34,419.79 in full and complete satisfaction of this claim.

## ORDER ON DENIAL OF REHEARING

RAUCCI, J.

This cause coming on to be heard on the Claimant's petition for rehearing, the Court being fully advised in the premises, it is hereby ordered that the petition for rehearing be, and it is hereby denied.