**In re Arthur Joseph VERDUN, Debtor.**

**Bankruptcy No. 87–90456.**

United States Bankruptcy Court,
C.D. Illinois,
Danville Division.

Oct. 6, 1988.

Emmanuel Guyon, Streator, Ill., for debtors.

Terrence Corrigan, Springfield, Ill., for State of Ill.

David Hoff, Paris, Ill., for Farmers Home Admin.

Scott Swaim, trustee.

OPINION

GERALD D. FINES, Bankruptcy Judge.

This matter is before the Court on the Petition to Authorize Use and Right to Lease for a period of Chapter 12 Reorganization filed herein by the debtor, Arthur Joseph Verdun, and on the Motion for Relief from Automatic Stay filed by the People of the State of Illinois, ex rel. Michael Tristano, Director of the Department of Central Management Services for the State of Illinois, and Michael P. Lane, Director of the Department of Corrections of the State of Illinois (State). A hearing was conducted on these matters on August 11, 1988, and again on September 8, 1988.

In deciding the matters before it, the Court has considered the arguments of counsel, the Memoranda of Law submitted by the parties, the agreed facts, and exhibits submitted to the Court. The Court finds the following undisputed facts to be relevant to the determination of the matters presented in the motions of the parties.

1. On November 1, 1980, debtor entered into a farm lease with the State of Illinois to lease certain acreage located at the Dwight Correctional Center in Dwight, Illinois, containing at that time 42.97 rotated acres more or less and 39.4 acres of hay. Said lease was for a term from January 1, 1981, through December 31, 1983.

2. In December 1983, debtor renegotiated with the State of Illinois and, as a result, a new farm lease was executed to cover 35.5 acres rotated crops and 39 acres of hay. The lease was for a term to begin January 1, 1984, and to end December 31, 1986. Under this lease, the debtor was to pay a sum of $136.50 per acre for the rotated crop acreage and $16 per acre for hay acreage, for a total annual rent due of $5,469.75. The evidence indicated that this lease did continue through December 31, 1986, and that, up until that point in time, the debtor was successful in making the annual cash rent payment. (See Appendix A, State of Illinois Farm Lease.)

3. In November 1986, prior to the termination of the above-mentioned farm lease, the debtor submitted a bid to the State of Illinois to re-lease the Dwight Correctional Center property at the rate of $62 per acre for the rotated crops and $6 per acre for the hay acreage for a total of $2,435. (See Appendix B, Bid Form Dwight Correctional Center.)

4. On December 30, 1986, the Department of Central Management Services for the State of Illinois, S. Michael Bartletti, Manager, Real Estate Division, wrote a letter to the debtor advising him that his bid for leasing the Dwight Correctional Center farm land was being rejected, the Department of Corrections having determined that it was in the best interest of the State to allow the Correctional Center to farm the ground. (See Appendix C, Department of Central Management Services Letter.)

5. At the same time, the debtor presented a State of Illinois farm lease agreement form to the State for a lease term to begin January 1, 1987, and end December 31, 1987. This lease form included rent in the amount proposed in the debtor's bid. This lease was never executed by the State nor is there any indication of any further correspondence between the State and the debtor at the time.

6. During the 1987 crop year, the debtor continued to occupy and farm the correctional center property. This was done absent an executed lease for 1987 or any type of agreement with the State as to this land. The debtor did not tender any type of rent payment to the State for the 1987 crop year and has not done so to this date.

7. The debtor again occupied the land in question in the Spring of 1988, at which time he planted soy beans on the rotated acreage.

8. In June 1988, the State filed a Forcible Entry and Detainer action in Livingston County, Illinois, to regain possession of the land in question.

9. The Livingston County action was stayed by this Court pending a determination on the issues addressed in the pleadings before this Court.

The first issue which the Court must consider is whether this Court has jurisdiction to determine the questions before it. The Court finds that, pursuant to 28 U.S.C. § 1471(e), the Bankruptcy Court has exclusive jurisdiction over all of the property of the debtor as of the date the debtor filed his petition in bankruptcy. The Court interprets § 1471(e) to include property of which the debtor has possession at the time of the commencement of his bankruptcy case and property as to which the debtor asserts an ownership interest. In the instant case, the debtor not only was in possession of the property in question, but also asserts that he has an ownership interest in said property. Given these facts, the Court finds that it has

jurisdiction to decide the status of the leasehold interest which debtor claims in the Dwight Correctional Center property.

In his petition, the debtor claims that the combination of inaction on the part of the State of Illinois and his occupancy of the property in question for two crop years after the expiration of his written lease results in the creation of a holdover tenancy for a term equal to that of the expired lease. The debtor asks that the Court allow him to continue to farm the subject property for the period of his Chapter 12 plan of reorganization which is to conclude in 1992.

In reviewing the facts before it, the Court finds that it is clear that the debtor did occupy the property in question under two written leases, each having a term of three years, and that the last written lease expired in December 1986. There is no question that the debtor attempted to negotiate a new lease with the State for crop year 1987, but the State rejected debtor's proposed terms and no new written lease was entered for the 1987 crop year. Despite the State's written rejection of the debtor's proposed lease, the debtor continued to occupy the subject property in 1987 and again in 1988. It is on this basis that the debtor claims a holdover tenancy was created for a like term as his two previous leases.

In order to determine whether a holdover tenancy has been created, the Court must turn to Illinois law. The Court finds that the law in Illinois as to the creation of a holdover tenancy requires that a landlord must elect to treat a tenant, after the expiration of his lease, as a tenant for another term on the same conditions as in the original lease. In Illinois, the focus is on the intention of the landlord as to a holdover tenancy and not the tenant's action. *Bismarck Hotel Co. v. Sutherland,* 92 Ill.App. 3d 167, 47 Ill.Dec. 512, 415 N.E.2d 517 (1981). Further, the mere fact that a landlord does not take any active steps to regain possession after a lease expires is not considered sufficient to create a new tenancy. *The Cairo and St. Louis Railroad Co. v. Wiggins Ferry Co.,* 87 Ill. 230 (1876). In

this case, the facts clearly indicate that the State did not intend to create a new tenancy given its letter to the debtor of December 30, 1986, rejecting the debtor's proposal for a new lease for 1987, (Appendix C), and while the State was negligent in failing to take certain action to regain possession of the subject property; this does not in itself act to create a holdover tenancy.

In reviewing Illinois law on the creation of holdover tenancies, this Court has seen a common thread which runs through all cases wherein a holdover tenancy was found; that being the acceptance of rent payments by the landlord. *Wanous v. Balaco,* 412 Ill. 545, 107 N.E.2d 791 (1952), and *Bismarck Hotel, supra.* In the case at bar, it is undisputed that no rent payments were accepted by the State nor for that matter were any payments ever tendered by the debtor. The debtor argues that he was ready to tender payment in 1987, but never received instructions from the State as to who and where to pay. The Court is not impressed by this argument given the fact that debtor's previous leases included this information and the debtor could have requested further information from the State at any time. Additionally, the lease which debtor proposed for 1987 specified the place of payment.

In conclusion, given the undisputed facts of this case and their relation to Illinois law, this Court cannot find that a holdover tenancy has been created and, even if this Court were to find a holdover tenancy, such a tenancy would only include crop year 1989 based upon the previous leases, and not a period as long as the debtor requests. As such, the Court must *DENY* the debtor's Petition to Authorize Use and Right to Lease for a Period of Chapter 12 Reorganization. The Motion for Relief from Automatic Stay filed by the State on August 11, 1988, is ALLOWED.

This Opinion is to serve as Findings of Fact and Conclusions of Law pursuant to Rule 7052 of the Rules of Bankruptcy Procedure.

# APPENDIX A

## EXHIBIT A

### STATE OF ILLINOIS FARM LEASE AMENDMENT

*#4+5*

The State of Illinois, acting through its Department of Central Management Services, Lessor and Joe Verdun, RR #2, Box 108, Dwight, Illinois 60420, Lessee, mutually agree to amend the lease between the parties to farmland located at the ▓▓▓▓ Correctional Center, dated November 10, 1983 as follows:

1. Demised Premises: The parties agree that the acreage of the demised premises shall be reduced from 82 acres (43 rotated, 39 hay) to ▓▓▓▓ acres (35.5 rotated, 39 hay).

2. Rent: The parties agree that the annual rent shall be reduced from Sixty-four Hundred Ninety-three Dollars and Fifty Cents ($6,493.50) per year to Fifty-four Hundred Sixty-nine Dollars and Seventy-five Cents ▓▓▓▓ to reflect the reduced acreage.

All other terms and conditions remain the same.

The undersigned parties mutually agree to the above lease, including all terms and conditions thereof.

| LESSOR | LESSEE |
|---|---|
| State of Illinois<br>Department of<br>Central Management Services | Joe Verdun<br>RR #2 - Box 108<br>Dwight, Illinois |
| BY _Richard H. McCluney_ | BY _Joe Verdun_ |
| TITLE _DIRECTOR_ | TITLE _J. Farmin_ |
| DATE _07/23/85_ | DATE _12-24-84_ |

*815-584-3303*

APPROVED BY

State of Illinois
Department of Corrections

BY _Michael O. Lane by M. DeMarco_

TITLE _Director_

DATE _2/15/85_

DCMS
APPROVED
LEGAL FORM
LEGAL COUNSEL

Lease No. _____

## STATE OF ILLINOIS FARM LEASE

The State of Illinois, acting through its Department of Central Management Services, Lessor, and __Joe Verdun, RR 2, Box 108, Dwight, IL 60420__ , Lessee, mutually agree to this lease on the following terms and conditions.

1. DEMISED PREMISES: Lessor agrees to lease to Lessee the premises commonly known as __Dwight Correctional Center Farm__ and more particulary described as:

82 acres (43 rotated, 39 hay)

2. TERM: The lease term will begin __January 1__, 19_84_ and end __December 31__, 19_86_ unless terminated earlier as provided in this lease.

3. RENT: The Lessee agrees to pay the Lessor an annual rent for the above described premises according to the following schedule:

Rent for the demised premises shall be $__136.50__ per acre rotated and $__16.00__ per acre pasture/hay, a total of __Six thousand four hundred ninety-three and 50/100__ Dollars ($__6,493.50__) per year, payable on or before December 1, 19_84_. If Lessee fails to pay rent as scheduled a 1.5% per month finance charge will be assessed against any balance due. This represents an annual percentage rate of 18.0. Rent for each succeeding lease year will be due on or before December 1 of that year.

Rent will be payable to the Department of Corrections, Correctional Industries Division, unless otherwise designated by Lessor. Copies of the rental payments should be mailed to Department of Central Management Services, Bureau of Property Management, 712 Stratton Office Building, Springfield, Illinois 62706.

4. TERMINATION: If the State desires to use or sell any portion of the leased premises the Lessor may terminate this lease after giving the Lessee written notice 90 days prior to termination.

In the event that the Lessor withdraws any portion of the premises, the withdrawn portion shall be prorated according to the percentage of acreage withdrawn. This amount will then be subtracted from the total amount of rent otherwise payable under this lease.

If the Lessee defaults on any obligations imposed by this lease and does not cure the default within 30 days of receipt of written notice specifying the instance(s) of default, then this lease will automatically terminate on the 31st day following receipt of notice.

5. ASSIGNMENT: Lessee will not assign or sublet this lease in whole or in part without first obtaining the Lessor's written consent.

6. NOTICES: All notices will be sent by certified mail. Notices to the State of Illinois should be directed to the Department of Central Management Services, Bureau of Property Management, 712 Stratton Office Building, Springfield, Illinois 62706.

7. WAIVER OF WARRANTY: Lessee agrees that he has fully inspected the leased property and takes it as is. The State reserves warranties of any kind and disclaims any responsibility for visible or latent defects in the demised premises.

8. LESSEE'S INVESTMENT AND EXPENSES: The Lessor will not compensate and Lessee agrees to furnish the following items at its own expense:

 A. All machinery, equipment, labor, fuel and power necessary to farm the premises in a satisfactory manner.

 B. All hauling of all materials needed for making repairs or minor improvements to the premises, except where otherwise agreed to.

 C. All labor required for repairing or improving the premises, except where otherwise agreed to.

 D. All seed, inoculation, disease treatment materials, fertilizers, herbicides and insecticides.

 E. Plowing.

 F. Insurance on equipment and employees as provided in Section 14 of the lease.

 G. Any taxes assessed against the leasehold interest or crops as provided in Section 16 of the lease.

 H. Any other materials or work expended during the term of the lease, except as otherwise agreed to.

9. LESSEE'S DUTIES:

 A. In addition to the prompt payment of all rent, Lessee agrees to perform the following required activities:

 1. To cultivate the farm faithfully and in a timely, thorough and businesslike manner.
 2. Keep the premises neat and orderly.

 3. Prevent all unnecessary waste, loss or damage to the property of the state.

 4. Comply with the rules and regulations of the Illinois Pollution Control Board.

 5. Practice fire prevention and follow safety rules.

6. Keep all vehicles and other equipment located on the premises locked with keys removed when not attended. Lessee is solely responsible for all unattended equipment.

7. Maintain a record of soil treatment as indicated on forms provided by the Lessor for this purpose. Lessee is also required to provide a supplier's statement which includes the amounts of lime and fertilizer purchased and the date of purchase. (Form Attached)

 A copy of these records will be forwarded to the Illinois Department of Corrections, Correctional Industries Division, 1301 Concordia Court, Springfield, Illinois 62706 (Attention: William Beaty)

8. Use due care in farming around now existing manholes and telephone poles. Lessee will be solely responsible for any damage to any manholes or telephone poles.

9. Allow the Lessor access to all roads and trails on the premises. Lessor agrees to jointly maintain with Lessee any road or trail that the Lessor uses on a regular basis.

 Lessee agrees to maintain all other roads and trails on the premises in a condition equal to or exceeding the condition of such roads or trails on the date Lessee took possession of premises.

B. Lessee further agrees to refrain from the following activities unless it has received the Lessor's written consent:

 1. Lessee will not erect or permit any structure to be erected or to incur any expense on behalf of the Lessor for such a purpose.

 2. Lessee will not add electrical wiring, plumbing or heating to any building without the express written consent of Lessor.

 If consent is given all such additions must meet any applicable codes and standards.

 3. Lessee will not borrow against, use as collateral or encumber in any way any crops growing in or produced by the premises.

 4. Lessee will not use any buildings or other structures located on the demised premises.

 5. Lessee agrees not to plow permanent pasture or meadowland.

 6. Lessee will not cut live trees for personal use or for sale.

 7. Lessee will not permit the erection of any commercial advertising signs on the farm.

 8. Lessee will not pasture stock on now seedings of legumes or grasses in the year they are seeded.

9. Lessee agrees not to block any road entrance or crossing so as to inhibit the State's access in any way.

C. Additional agreements: _____

_____

_____

10. **ACCESS TO PREMISES:** The Lessor will designate all points of access to the premises.

11. **OPERATIONS TO BE CONDUCTED WITHIN PREMISES:** All farming, plowing, turning, crop removal and other operations will be within the confines of land actually rented and not on adjoining lawns, yards, fields or other areas including areas planted in grass surrounding the premises and running along highways.

12. **LESSOR'S RIGHT OF ENTRY:** Lessor will have the right to enter at any time to inspect fields, ditches, tile outlets, fences or any other part of the leased premises, and to repair or do any other work Lessor considers necessary or desirable.

13. **RELEASE AND INDEMNITY:** The Lessee agrees to assume all risk or loss and to indemnify and hold the State, its officers, employees or agents harmless from and against all liabilities, demands, claims, suits, losses, damages, causes of action, fines or judgments, including injuries to persons (including death) and for the loss of, damage to, or destruction to property (including property of the State) because of lessee's negligent or intentional acts or ommissions. In the event that any demand or claim is made or suit is commenced against the State, the State shall give prompt notice thereof to the lessee and lessee shall have the right to compromise or defend the same to the extent of its own interest.

14. **INSURANCE:** For the term of the lease, lessee shall maintain insurance with a carrier acceptable to the State, insuring lessee while performing on State premises hereunder for the following types and in stated minimum amounts:

| | |
|---|---|
| Liability Insurance: | $250,000 per person |
| | $500,000 per occurrence |
| Property Damage: | $500,000 per occurrence |
| Workers Compensation: | Full Statutory Limits |
| Crop Insurance: | Equal to Contract Amount |

Lessee shall furnish a Certificate of Insurance and agrees that all applicable insurance policies be amended to name the State as an additional insured and to receive notice of termination of coverage.

15. **TAXES:** Lessee is solely responsible for any taxes of any kind or character assessed against his leasehold interest or against crops on premises or any other incident of this lease pursuant to Section 19.5 of the Illinois Revenue Act.

16. **LANDLORD'S LIEN FOR RENT AND PERFORMANCE:** The Lessor is entitled to the Landlord's lien provided by law on crops grown or growing on the premises as additional security for the specified rent and for the faithful performance of the terms of the lease by the Lessee.

In the event that the Lessee fails to pay the rent due or fails to keep any of the agreements of this lease, all costs and attorney's fees of the Lessor in enforcing collection or performance will be added to and become a part of the obligations payable by the Lessee under this lease.

The Lessor's decision to exercise its rights under this section will not preclude the Lessor from pursuing any other legal remedies available to the Lessor.

17. MINERAL RIGHTS: Nothing in this lease shall be interpreted as giving the Lessee any right, title or interest to any minerals underlying the lease premises.

The Lessor retains full right to enter the property to search, excavate, work, and remove any minerals present on the premises.

18. SURRENDER OF PREMISES: Lessee agrees to surrender possession of the demised premises upon the termination of this lease without further demand on part of Lessor.

19. TERMS BINDING: The terms of this lease are binding on the heirs, executors, administrators and assigns of both the parties.

20. AMENDMENTS: Amendments and alterations to this lease may be made only upon mutual agreement of the parties.

21. ADDITIONAL TERMS: Additional terms and conditions of this lease are contained in Rider(s) _A & B_ which is/are incorporated into this lease.

22. BRIBERY CLAUSE: Lessee certifies that he has not bribed or attempted to bribe an officer or employee of the State of Illinois, nor has he made an admission of the same which is a matter of record.

THE UNDERSIGNED PARTIES mutually agree to the above lease, including all terms and conditions thereof:

LESSOR LESSEE

State of Illinois
Department of
 Central Management Services

BY _____ BY _Joseph a. Verdun_

TITLE _____ _____

DATE _____ _____

RECOMMENDED BY _Michael Phinely_ ADDRESS _RR #2_
 _CWard_ _Box 109_

TITLE _____ _Dwight Ill. 60420_

DEPARTMENT OF CORRECTIONS. ATTEST _____

## RIDER A

**DISCLOSURE OF BIDDER**

This disclosure must be completed in order for your bid to be considered.

1. CORPORATIONS: If the bidder is a corporation state the names of each stockholder holding more than 7 1/2% interest in the corporation.

---
---
---
---

---
---
---
---

2. PARTNERSHIP: If the bidder is a partnership state the name of any and all partners, including limited partners if applicable.

---
---
---
---

---
---
---
---

FAMILY OPERATION: If the bidder is a family operation state the name and relationship of any and all family member's who are actively participating in farming operations.

---
---
---
---

---
---
---
---

4. SOLE PROPRIETORSHIP: If the bidder is a sole proprietorship state the name _Joseph A. Verdin_ .

I hereby certify that the information provided above is true and correct.

_Joseph A. Verdin_ _11-10-83_
NAME DATE

JAN RECEIVED Correctional Industries

412

DOC LEASES

Tenant acknowledges that the leased premises are part of and to be maintained as a correctional institution facility and that certain ordinary and extra-ordinary steps must be taken to maintain proper security. Specifically tenant agrees to the following:

1. Tenant will notify a designated representative of the correctional institution when he arrives on the premises and departs the premises.

2. Tenant will allow the landlord or his agents to have full and complete access to any or all of the premises for the purpose of maintaining proper security or securing the custody of any inmate, or for conducting any investigations or man hunt incident to the recapture of any inmates. Any damage to crops incurred during any of the above activities or any ordinary and necessary security activities shall be at the risk of the tenant.

3. The tenant agrees to hold the landlord, his agents, his employees, or any person or persons in the landlord's custody harmless from any liability for any damage to crops and from any other personal liability or from liability of any kind whatsoever for damages incurred in the activities described above.

4. Tenant hereby expressly agrees to permit the State to engage in any other activities that it may deem necessary in order to maintain proper security on the premises.

5. The tenant agrees not to pasture or graze any stock on any land covered by this lease.

1984 JAN 4
RECEIVED
Correctional
Industries

APPENDIX B

.EXHIBIT B'

**BID FORM**

DWIGHT CORRECTIONAL CENTER

35.5 ACRES ROTATED.
39 ACRES PASTURE/HAY

I propose to lease the land described in the preceding pages, according to the conditions specified and in compliance with the terms and conditions set forth in the form of lease attached hereto, all for the term indicated, at the rate of $ __62__ per acre for rotated crops; $ __6__ per acre for pasture/hay; for a total of $ _2435.00_ per year payable as stated on Page 1 of the attached lease document.

**BID REQUIREMENTS**

The successful bidder will be required to deliver to the Department of Central Management Services, within five days of the award bid, a time deposit certificate, performance bond, letter of credit, or cashier's check for no less than 10% of the total bid amount. This deposit will be made out to the Department of Corrections (Landlord). The Department of Corrections will then hold the deposit until completion of the terms of the lease and fulfillment of Lessee's obligations, at which time the deposit will be signed over and returned to the Lessee. If a cashier's check is submitted, the Department of Corrections will deposit it; this amount will then be deducted from rent due December 1st.

If at any time during the term of the lease, the Lessee fails to perform as. agreed upon the lease, this time deposit shall be forfeited in addition to any other amount or liability specified in the attached lease.

In the event the high bidder fails to accept all lease terms and conditions, any damages caused to the State shall be borne by the defaulting bidder. The State of Illinois shall then award the bid to the next highest bidder..

This proposal shall not result in a contract and no rights shall be conferred unless and until accepted in writing by the State of Illinois, Department of Central Management Services.

By signing this Bid Form I hereby certify that neither I nor any of my employees have been convicted of bribery or attempted bribery of an office or employee of the State of Illinois or have made a record admission of the same.

_Joe A. Vordun_ _10-10-86_
BIDDER'S SIGNATURE DATE

_RR #2 Box 108_
ADDRESS

_Dwight Ill. 60420_
CITY, STATE, ZIP CODE

_815-584 3305_
PHONE

414

CENTRAL MANAGEMENT SERVICES

Michael E. Tristano, Director Rose Mary Bambula, Assistant Director

December 30, 1986

Mr. Joe A. Verdun
RR #2, Box 108
Dwight, Illinois 60420

Dear Mr. Verdon:

Please be advised that your bid for leasing the Dwight Correctional Center farmland is being rejected.

The Department of Corrections has determined it is in the best interest of the State to allow Correctional Industries to farm the ground.

If you have any questions feel free to call.

Sincerely,

S. Michael Bartletti, Manager
Division of Real Estate

SMB:cd