**In re SAUK STEEL COMPANY, INC., Debtor.**

**Bankruptcy No. 90 B 16933.**

United States Bankruptcy Court, N.D. Illinois, E.D.

Oct. 21, 1991.

Michael R. Collins, Collins & Collins, Chicago, Ill., for debtor.

William I. Fine, Highland, Ind., for West Creek Inv. Partnership.

Kevin T. Keating, Richard P. Klaus, McDermott, Will & Emery, Chicago, Ill., for Sauk Bldg. Corp.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

JACK B. SCHMETTERER, Bankruptcy Judge.

On September 14, 1990, an Involuntary Petition under Chapter 7 of the Bankruptcy Code was filed against the debtor Sauk Steel Company, Inc. ("Debtor"). On October 11, 1990 Debtor converted the case to one under Chapter 11, Title 11 U.S.C. Sauk Building Corporation has moved to modify the automatic stay under 11 U.S.C. § 362 so it can proceed to obtain possession of real estate owned by it and occupied by Debtor. It also moved for relief from an order of May 13, 1991, which approved a new lease of the subject property entered into between Debtor and West Creek Investment Partnership ("West Creek"), asserting that West Creek had no authority to enter into any lease with Debtor at the time.

Trial was held and the parties rested. Considering the evidence admitted, and having heard and considered argument of counsel, the Court now makes and enters the following Findings of Fact and Conclusions of Law. For reasons set forth below, the Court has entered an order (1) granting relief from stay and (2) finding the Order of May 13, 1991 ineffective against Sauk Building Corporation and therefore the motion for relief from that Order is moot. To the extent if any that the Order of May 13th affected movant, the same is vacated under Rule 60(b)(3) and (6) F.R.Civ.P.

### FINDINGS OF FACT

1. The Premises involved here is commonly referred to as 3215 Butler Street, South Chicago Heights, Illinois ("Premises"). At all times mentioned herein, the Premises was occupied by Debtor for manufacturing purposes. West Creek formerly owned title to the Premises. On June 1, 1983, it mortgaged the Premises to Sauk Building Corporation, in return for a loan. That mortgage secured a mortgage note executed by West Creek in favor of Sauk Building Corporation. To further secure the mortgage note, Sauk Building Corporation and West Creek entered into a collateral assignment of lease. (Motion for Relief from Stay ¶¶ 1 and 2; Debtor's Response ¶¶ 1 and 2.)

2. West Creek defaulted on its mortgage obligations to Sauk Building Corporation. Accordingly, Sauk Building Corporation filed a Complaint for foreclosure on

November 30, 1990 in the Circuit Court of Cook County, Illinois. The Debtor was not a party to that action. On February 5, 1991, the Circuit Court entered an Order granting Sauk Building Corporation possession of the Mortgaged Premises. (Motion for Relief from Stay ¶ 3; Debtor's Response ¶ 3; and Sauk Building Corporation's Ex. 1.) That Order was directed against the then owner West Creek, and did not by its terms affect Debtor (nor could it have done so because the automatic stay protected Debtor under 11 U.S.C. § 362.). Sauk Building Corporation did not then or subsequently through date of the hearing in this Court take physical possession of the Premises which continued to be occupied by Debtor.

3. At one time, West Creek had a written lease with the Debtor whereunder Debtor leased the Premises from West Creek to use in its manufacturing operations for a term beginning June 1, 1983 and expiring May 31, 1988. During the final year of that lease term, the rent was $10,700/month plus taxes, insurance, and other responsibilities. It was a triple net lease. (Sauk Ex. 10.) Annual real estate taxes on the Premises were approximately $62,000. After that written lease expired no new lease written or oral was entered into, but Debtor remained on the Premises and paid the lease base rent in effect during the final year of the written lease (but not real estate taxes) until some time before the Involuntary Petition was filed against it in the fall of 1990. While Debtor was paying that base rent, the money was paid over to Sauk Building Corporation on the mortgage obligation of West Creek.

4. On February 15, 1991, Sauk Building Corporation, then still the mortgagee, filed here a Motion which sought rent from the Debtor, or in the alternative an order granting relief from the automatic stay so that it could pursue a forcible entry and detainer action against the Debtor. (Motion for Relief from May 13, 1991 Order ¶ 4; Debtor's Answer ¶ 4.) It thereby sought permission to broaden the state court action so as to exercise its rights under the state court order for possession entered on February 5, 1991, but entered at that time only against West Creek.

5. Without notice to Sauk Building Corporation, on May 3, 1991, the Debtor moved here for approval by this Court of a new Industrial Building Lease Agreement with West Creek. The amount of rent was to be $1,500 per month with an additional $1,500 per month contributed toward general real estate taxes. According to the Motion, the previous rent was in excess of $9,000 per month on a triple net basis, so the new lease was presented in a very favorable light. On May 13, 1991, that Motion was granted at a hearing at which no representative or counsel for Sauk Building Corporation was present. At all times mentioned herein, Mr. John Rosinko was both President and chief operating officer of the Debtor, and also the general partner of West Creek. Therefore this new lease and all agreements between Debtor and West Creek were actually decisions by John Rosinko on behalf of both entities, though he did consult with a prospective new investor about the lease.

6. Subsequently, Sauk Building Corporation and West Creek engaged in settlement negotiations pertaining to the pending motion to modify stay. Final hearing on the original Motion of Sauk Building Corporation for Relief from Stay was postponed several times upon joint request of the Debtor and Sauk Building Corporation. (Motion for Relief from May 13, 1991 Order ¶ 4; Debtor's Answer ¶ 4.)

7. On June 6, 1991, West Creek and Sauk Building Corporation entered into a Settlement Agreement. West Creek paid the sum of $15,000 in three installments as consideration to Sauk Building Corporation for entering into the Settlement Agreement. (Sauk Building Corporation's Exhibit 3, ¶ 1.)

8. Pursuant to the Settlement Agreement, West Creek was required immediately to deposit into escrow at the Chicago Title & Trust Company ("CT & T") a fully-executed recordable warranty deed to the Mortgage Premises, an amended and restated 1983 Note, and an amended 1983 Mortgage. West Creek was also required

to deposit into that escrow the amended 1983 Collateral Assignment, evidence of payment of real estate taxes on the Premises, commitment for title insurance, and escrow fees on or before July 31, 1991. No such deposit was deemed made until the date Sauk Building Corporation and/or Hermine Gooder gave notice to West Creek of the acceptability of the deposit. (Sauk Building Corporation's Exhibit 3, ¶ 3.) The total amount necessary to pay and redeem back real estate taxes, principal, interest, and all related costs for the last three tax years is about $300,000.

9. Sauk and Hermine Gooder, not individually but as Trustee of The Hermine K. Gooder Trust dated June 15, 1977, were required to deposit into the escrow the release deed, the 1986 note, a stipulation to dismiss, and an executed withdrawal of the Motion for Relief. (Sauk Building Corporation's Exhibit 3, ¶ 3.)

10. On June 7, 1991, pursuant to the Settlement Agreement, West Creek's attorneys delivered to Sauk Building Corporation's attorneys for placement into the escrow a draft of an amended Collateral Assignment of the Lease from West Creek to Sauk Building Corporation. On June 13, 1991, the attorneys for Sauk Building Corporation notified attorneys for West Creek that the draft Collateral Assignment of Lease was unacceptable. That proposed draft document referenced the new lease between Debtor and West Creek that had been approved on May 13th. However, that reference was obscure and the draft itself was discarded by counsel for Sauk Building Corporation who redrafted the document in accord with the Settlement Agreement. Sauk Building Corporation did not then learn of the new lease between Debtor and West Creek.

11. West Creek delivered to and deposited the deed into the CT & T escrow. (Sauk Building Corporation's Ex. 6.) An amended 1983 Mortgage and an amended Collateral Assignment of Lease were drafted by attorneys for Sauk Building Corporation and signed by West Creek. (Sauk Building Corporation's Ex. 7.) These documents were delivered to CT & T for deposit into the escrow.

12. West Creek informed Sauk Building Corporation that it would be unable to pay the real estate taxes by July 31, 1991. At that time, the back taxes due from West Creek totalled over $300,000. It was clear that West Creek was not able to meet its tax payment obligations under the Settlement Agreement. On July 30, 1991, John Rosinko met with Hermine Gooder, an officer of Sauk Building Corporation, in an attempt to negotiate an extension. At that meeting, Rosinko gave Gooder a check in the amount of $5,000, which was offered as consideration for such extension. Gooder did not cash that check.

13. On July 31, 1991, West Creek defaulted under the Settlement Agreement by failing to deposit a receipt for or proof of payment of the agreed real estate taxes. Accordingly, Sauk Building Corporation elected under the Settlement Agreement to instruct CT & T, as escrow agent, to turn over to Sauk Building Corporation the escrowed executed deed to the Premises. That was done. On August 6, 1991, that deed was recorded with the Cook County Recorder of Deeds. (Sauk Building Corporation's Ex. 8.) Sauk Building Corporation thereupon became and now remains the legal titleholder to the Mortgaged Premises. In accordance with the Settlement Agreement, Sauk Building Corporation withdrew its original Motion for Relief from Stay on August 5, 1991.

14. On August 13, 1991, after Sauk Building Corporation had become the owner of the property, Kurt D. Zimmerman, an attorney for Sauk Building Corporation spoke with Michael R. Collins, the Debtor's attorney. He asserted the necessity to create a lease between the Debtor and Sauk Building Corporation since there was no lease in effect between them. Mr. Collins then informed Mr. Zimmerman that a lease dated April 15, 1991 had been negotiated between the Debtor and West Creek, and was approved by the Bankruptcy Court. That meeting was the first time Sauk Building Corporation was informed of that

lease or of the motion for approval of that lease by this Court.

15. Both West Creek (through the foreclosure action and the original Motion for Relief from Stay) and the Debtor (through the original Motion for Relief from Stay received by lawyers for Debtor, and by Mr. Rosinko who leads both the Debtor and West Creek) were aware of entry of the State Court Order placing Sauk Building Corporation in possession of the Mortgaged Premises.

16. The Debtor does not have a lease with Sauk Building Corporation nor has the Debtor paid any rent to Sauk Building Corporation. Consequently, Sauk Building Corporation filed the instant Motion for Relief from Automatic Stay.

17. Sauk Building Corporation has also concurrently moved for relief from the Order entered by this Court on May 13, 1991, approving the lease between Debtor and West Creek for the Premises.

18. In moving on May 13th for approval of the new lease, Debtor impliedly represented to this Court that the lessor West Creek had authority to execute a lease of the Premises. In fact it did not possess such authority. Such lack of authority and the state court order for possession of February 5th were not disclosed to this Court in connection with Debtor's Motion to approve the new lease. Debtor also impliedly represented to the Court that all parties affected by the order were on notice. The Motion to modify stay filed by Sauk Building Corporation on February 15, 1991 was not withdrawn until after the motion to approve lease was presented on May 13th, the stay motion being later dropped on August 5th pursuant to the Settlement Agreement. Accordingly on May 13th Sauk Building Corporation was still appearing before the court in this case and was entitled to notice of any pleadings seeking to affect its interest. The motion to approve lease was presented May 13th, just before the Settlement Agreement was signed on June 6th. The Settlement Agreement provided for transfer of title in lieu of foreclosure (as subsequently occurred) unless West Creek performed certain condi-

tions, including payment of large real estate taxes that it had no funds to pay. The motion to approve lease was therefore an effort to create favorable leasehold rights in Debtor on the eve of a likely transfer of title. This was done without notice to the future owner previously ordered into possession by the state court, a party intended to be bound by that lease who was already before the Court seeking relief in another connection. In that circumstance, notice should have been served on Sauk Building Corporation, even though it had not requested to be put on the general service list.

19. Terms of the April 15, 1991 lease between West Creek and the Debtor were not the result of arms-length negotiation, in that those terms allowed Debtor to lease the Mortgaged Premises for a monthly sum far below rental terms of the prior lease and rental value set by the prior lease. While the new lease was represented to cover only half the building, in fact Debtor is now occupying the entire building, as it did at all times mentioned in these Findings.

20. At the hearing, Debtor has now offered $5,000/month rent to Sauk Building Corporation as the full extent of adequate protection offered, though no evidence demonstrated ability of Debtor to pay such rent. Such rent would be far below the rentable value of the subject premises; below the amount necessary to protect Sauk Building Corporation from diminishment of its equity due to its burden to pay real estate taxes, insurance, and maintenance (being barely enough to pay real estate taxes alone which amount to about $62,000/year); and far below an amount that would adequately protect the owner.

21. The Premises are necessary to the Debtor's operation, but Debtor did not demonstrate at the lift stay hearing that it has a viable plan of reorganization in prospect under which it must use the Premises. Debtor has no equity in the Premises.

22. To the extent any of these Findings of Fact constitute Conclusions of Law, they will stand as additional Conclusions. Facts set forth in the Conclusions of Law will

stand as additional Findings of Fact. Remarks of the Court from the bench at the conclusions of trial stand as additional Findings and Conclusions.

## CONCLUSIONS OF LAW

1. This Court has core jurisdiction of the issues here under 28 U.S.C. § 157(b)(2)(A), (G), and (M).

■ 2. A mortgagee in possession, after taking possession and unless limited by the mortgage, has the same rights with respect to leases and the real property as the mortgage gives the mortgagor, plus those given a mortgagee by common law. Ill.Rev.Stat. ch. 110, ¶ 15–1703(a) (1989).

■ 3. The mortgagee in possession also has the "same powers, duties, and liabilities as a receiver appointed for the real estate in accordance with this Article." Ill.Rev.Stat. ch. 110, ¶ 15–1703(a)(3) (1989).

■ 4. As set forth in § 15–1704(b)(1) of the Illinois Code of Civil Procedure, a receiver has the power and authority to secure tenants and execute leases. Ill.Rev. Stat. ch. 110, ¶ 15–1704(b)(1) (1989). Therefore, from February 5, 1991 when the order for possession of the Premises was entered by the Circuit Court in favor of Sauk Building Corporation, it had the sole authority to secure tenants and execute leases. Consequently, the April 15, 1991 lease of the mortgaged property between West Creek and the Debtor is invalid and unenforceable against Sauk Building Corporation.

■ 5. Sauk did not violate the automatic stay by obtaining the February 5, 1991 order from the Circuit Court of Cook County placing it as a mortgagee in possession in a case in which Debtor was not made a party. In Illinois, neither the mortgagee's entry into possession before foreclosure, nor the appointment of a receiver, automatically terminates a junior lease. Ill.Rev.Stat. ch. 110, ¶ 15–1701 (1989). After state court entry of an order for possession against a property owner, a lessee is in exactly the same position as it was in prior to such an Order.

6. Until a debtor is named as party-defendant, a foreclosure action does not generally affect the bankruptcy estate. *In re Comcoach Corp.*, 698 F.2d 571, 574 (2d Cir.1983).

7. The automatic stay prohibits actions against the debtor, the property of the debtor, and the property of the estate. 11 U.S.C. § 362(a). Since the foreclosure action in the instant case was not against the Debtor, and the order naming Sauk Building Corporation as mortgagee in possession did not affect the property of the Debtor of the estate, there was no violation of the automatic stay. *See Juneau's Builders Center, Inc. v. First National Bank of Gonzales*, 57 B.R. 254 (Bankr.M.D.La. 1986).

■ 8. In considering the present motion to modify stay, "Section 362(d)(1) requires an initial showing of cause by the movant, while Section 362(g) places the burden of proof on the debtor for all issues other than 'the debtor's equity in property,' 11 U.S.C. § 362(g)(1)." *In re Sonnax Industries, Inc.*, 907 F.2d 1280, 1285 (2d Cir. 1990). Thus under § 362 it is debtor's burden to offer and demonstrate adequate protection and that the property is necessary to a viable plan of reorganization that is in prospect within a reasonable time. *United Savings Ass'n of Tex. v. Timbers of Inwood*, 484 U.S. 365, 375–76, 108 S.Ct. 626, 632–33, 98 L.Ed.2d 740 (1988). Debtor failed to meet that burden, and therefore it cannot be said that the Premises is necessary to an "effective" reorganization. *Timbers, Id.* Since Debtor lacks equity in the Premises, grounds to modify stay are established under 11 U.S.C. § 362(d)(2). Also, adequate protection must be provided by cash payments to the extent of any "decrease in the value of such entity's interest in the said property." 11 U.S.C. § 361(1). The low rent offered by debtor was in an amount that would not fully pay for real estate taxes, insurance, and maintenance, let alone pay rent and thereby maintain the market value of the real estate which is dependent on an adequate rental cash flow. Therefore, debtor has not offered adequate protection sufficient

to preserve the interest of Sauk Building Corporation. Grounds to modify stay therefore are demonstrated under 11 U.S.C. § 362(d)(1).

9. The filing of a bankruptcy petition for relief does not stay an act by a lessor to obtain possession from the debtor under a nonresidential real property lease that has expired prior to the commencement of the bankruptcy case. 11 U.S.C. § 362(b)(10). Therefore, Debtor's expired lease gives it no rights in defense of the motion.

10. Since Sauk Building Corporation received an order for possession on February 5, 1991, West Creek had no authority on April 15, 1991 (when the new lease was signed), or on May 13, 1991 (when that lease was approved) to lease the Premises to Debtor. On those dates, West Creek had no ownership or possessory interest in the Premises, and no rights to lease the Premises since the mortgagee had been ordered into possession. Therefore the new lease is not binding on the current property owner Sauk Building Corporation. That property owner dismissed the original state court foreclosure action without any order for possession being obtained against Debtor. When it took title on August 6, 1991, such title was subject to whatever possessory rights Debtor had in the subject property at that time. *Ill.Rev.Stat.* ch. 110, ¶ 15–1401. No such rights arose out of the bogus lease approved May 13, 1991.

11. However, Debtor did hold over and occupy the Premises after the last written lease expired by its terms on May 31, 1988, and still occupies that Premises. Therefore, under Illinois law Debtor is now either a month to month tenant at sufferance, or a holdover tenant on a year to year basis for a term expiring May 31, 1991.

When a tenant holds over after expiration of a lease for a year or years, the landlord may elect to treat it as a trespasser or accept and treat it as a tenant from year to year. Holding over is implied from the continued occupancy of the demised premises by the tenant and continued payment of rent in the absence of a new agreement between the parties. In this circum-stance, a tenancy of year to year is created subject to all terms and conditions contained in the original lease. *Illinois Law and Practice*, "Landlord and Tenant," §§ 63, 127, and cases cited. *Cf. Matter of Chicago Rock Island and Pacific R. Co.*, 753 F.2d 56 (7th Cir.1985). However, all the facts and circumstances must be considered to ascertain the landlord's intent. *Troccoli v. L & B Products*, 189 Ill.App.3d 319, 321, 136 Ill.Dec. 695, 697, 545 N.E.2d 219, 221 (1st Dist.1989). For a holdover tenancy from year to year to arise, the landlord must recognize the new tenancy, as by accepting payment tendered as rent. *Illinois Law and Practice*, "Landlord and Tenant" § 64 and cases cited.

12. Absent the landlord's consent and agreement to the holdover and continued payment of rent at an agreed level, a tenancy at sufferance from month to month arises from a tenant's holding over and occupying the premises without agreement by the parties for a new leasehold. *Id.*, § 66 and cases cited. This is clearly so where the landlord makes clear that the old lease was terminated and would not be renewed. *Bismarck Hotel Co. v. Sutherland*, 92 Ill.App.3d 167, 47 Ill.Dec. 512, 415 N.E.2d 517 (1st Dist., 1980).

13. A tenant at sufferance (month to month tenant) has only naked possession and has no privity with the landlord. *Heller v. Goss*, 80 Ill.App.3d 716, 35 Ill.Dec. 933, 400 N.E.2d 70 (1st Dist.1980). The only distinction between a tenant at sufferance and a trespasser is that the tenant originally had the landlord's permission to enter. *Id.* A tenant at sufferance has no protectable property interest in continued possession of the premises. Thus, in a forcible entry and detainer action, the tenant cannot assert a property interest as grounds for injunctive relief to allow the tenant to remain in possession or as the basis of a defense. *Pullem v. Evanston YMCA*, 124 Ill.App.3d 264, 79 Ill.Dec. 881, 464 N.E.2d 785 (1st Dist.1984).

14. Here, Debtor continued to pay base rent under the old written lease for over a year after that lease expired by its terms,

and was not relieved of its obligation to pay taxes and other requirements under that lease. Such was of course acceptable to Mr. Rosinko who headed both the Debtor and its landlord West Creek. Moreover, Sauk Building Corporation has not questioned the *bona fide* nature of the original written lease or its terms as an expression of rentable value of the Premises. From the evidence it is clear that the Debtor, with consent of its landlord, held over as a tenant from year to year under terms and conditions of the expired lease, and presently occupies the Premises for a term expiring May 31, 1991. In these circumstances, Debtor's tender of low rent far below the terms of the old lease is for reasons previously stated wholly insufficient to provide adequate protection of the long term as well as insufficient to protect against the immediate deprecating interests of the movant-owner.

15. Since the Order of May 13, 1991 approved a lease that is void and of no legal force or effect against Sauk Building Corporation, its motion for relief from that Order is moot. One need not seek relief from an order if not affected by that order. To the extent if any that the Order of May 13th did affect Sauk Building Corporation, under the circumstances of lack of notice such order was obtained by misrepresentation to the Court and a fraud on Sauk Building Corporation, and should be vacated under Rule 60(b)(3) and for cause under Rule 60(b)(6), F.R.Civ.P. A motion to vacate an order for fraud is within the sound discretion of the court. *H.K. Porter Co. Inc. v. Goodyear Tire and Rubber Co.*, 536 F.2d 1115, 1119 (6th Cir., 1976). It is most appropriate to exercise such discretion here.